**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| **DEVAJIT MUKHERJEE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. |
| v. ) | |
| ) | |
| **POWERREVIEWS, INC**, ) | Trial by Jury Demanded |
| an Illinois corporation, and **MATTHEW MOOG**, ) | |
| an individual, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

NOW COMES the Plaintiff, DEVAJIT MUKHERJEE, by and through his attorneys, The Prinz Law Firm, P.C., and brings this Complaint against Defendants, POWERREVIEWS, INC. and MATTHEW MOOG.

## NATURE OF THE ACTION

1. Plaintiff Devajit Mukherjee ("Dev" or "Plaintiff") brings this action against his former employer, PowerReviews, Inc. ("PR" or "the Corporation") and its Chief Executive Officer, Matthew Moog ("Moog") (collectively referred to as the "Defendants") stating claims for (1) violations of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* ("IWA"), (2) common law retaliatory discharge, (3) violations of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"), (4) violations of the Fair Labor Standards Act of 1938 ("FLSA"), and (5) breach of contract.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over all claims pursuant to Section 216(b) of the FLSA and 28 U.S.C. §§ 1331 and 1367(a).

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because Defendants either reside or operate in the City of Chicago, Dev worked for Defendant PR in the City of Chicago, and Defendants' violation of the law occurred here

## THE PARTIES

4. Plaintiff Devajit Mukherjee resides in Illinois. During all relevant periods of this Complaint, Dev worked for the Defendants in Chicago, Illinois. Dev's mailing address is 8 Lakewood Drive, Glencoe, IL, 60022.

5. Defendant PR has its principal business address located at 180 North Dearborn Street, Chicago, IL, 60602.

6. Defendant Matthew Moog is, or was during all relevant periods of this Complaint, a majority shareholder and Chief Executive Officer ("CEO") of PR. His address is listed with the Secretary of State as 180 North LaSalle Street, Chicago, IL, 60601.

## FACTS RELEVANT TO ALL CLAIMS

7. On January 15, 2015, in exchange for Dev's agreement to serve on PR's Board of Directors, PR granted Dev a stock option to purchase 100,000 shares of the Corporation's Series B Common Stock.

8. On September 24, 2015, PR asked Dev take on an employed position as the Corporation's Chief Operating Officer ("COO"). PR asked Dev to resign from his Board of Director's role to take on the employed position of COO.

9. In connection with Dev's hire, PR presented Dev with an Employment Agreement dated September 24, 2015 ("Employment Agreement"), which is attached hereto as Exhibit 1, which stated Dev would be employed on an "at-will" basis.

10. Pursuant to the terms of the Employment Agreement, PR agreed to pay Dev a salary of $350,000.00 with a target bonus opportunity of $175,000. PR also granted Dev an "Initial Option Grant" to replace Dev's Board of Director's option and the potential to earn "Milestone Options" to compensate Dev if a majority of the Corporation was sold to an outside investor.

11. The Initial Option Grant provided Dev with a fully vested grant of 25,000 shares of the director option and an option equal to 1.75% of the Corporation, of which 25% was to vest on September 28, 2016 and the balance was to vest in thirty-six (36) equal monthly installments thereafter.

12. Dev agreed to become employed by PR and resigned from the Corporation's Board of Directors on September 28, 2015. He began working as PR's COO the same day.

13. Dev completed a number of high priority projects for PR and helped position the Corporation's engineering strategy. He also led negotiations with major clients and stakeholders.

14. As Dev's option vesting date neared, Defendant PR's CEO – Defendant Moog – began to change his behavior towards Dev.

15. In early August 2016, less than two months before the first vesting date of the Initial Option Grant, Moog informed Dev that he no longer wanted Dev to serve as COO and earn any of the granted options. Instead, Moog wanted Dev to continue the same work he was doing, but as an independent contractor with no rights to benefits or the unvested options.

16. As of August 15, 2016, PR reclassified Dev as an independent contractor with no benefits.

17. Despite PR's unilateral re-classification, Dev continued to work as an employee.

18. After August 15, 2016, PR calculated Dev's contractor rate based on his employed salary.

19. After August 15, 2016, Dev continued to work on the same projects which he managed as PR's COO. He continued to essentially work as PR's COO.

20. After August 15, 2016, Dev had to comply with Defendants' instruction as to when and where he was able to conduct his duties. Dev continued to be subject to Defendants' discretion and control.

21. After August 15, 2016, Dev continued to maintain a continuing relationship with Defendants despite the change to his employment status.

22. After August 15, 2016, Defendants required Dev to devote substantially his full time to his duties for Defendants. Dev continued to work for only one employer.

23. After August 15, 2016, Dev continued to use PR's equipment at PR's office. Dev continued to work on Defendants' premises despite Defendants' unilateral modification to his employment status.

24. After August 15, 2016, Dev continued to perform the essential functions for PR and continued to work as a high level executive employee.

25. Defendants maintained the right to discharge or terminate Dev at any time even after changing his employment status.

26. On August 26, 2016, PR presented Dev with a Consulting Agreement that was nearly identical to Dev's Employment Agreement.

27. Dev was concerned that PR's arrangement violated the U.S. Department of Treasury Internal Revenue Code (the "Code" or "IRC") and U.S. Department of Labor ("DOL") misclassification rules.

28. By misclassifying Dev as an independent contractor instead of as an employee, PR's arrangement violated several laws, including the Federal Insurance Contributions Act ("FICA"), the Federal Unemployment Tax Act ("FUTA"), and several sections of the Code. *See* IRC §§ 3101–3102, 3301. The Code requires that an employer withhold federal income tax from an employee's wages and to hold the money until making a federal tax payment. *See* 26 U.S.C. § 3402. The Code further penalizes an employer that fails to properly pay taxes. *See* 26 U.S.C. § 3509; 26 U.S.C. § 7202. FICA requires an employer to withhold payroll taxes for Social Security and Medicare from an employee's paycheck, and also requires the employer to provide the same percentage to pay for Social Security and Medicare. In addition, the Illinois Income Tax Act requires an employer to withhold employment taxes from an employee's wages to pay to the State of Illinois. *See* 35 ILCS 5/701.

29. In addition, PR's misclassification violated the FLSA.

30. Both the DOL and the U.S. Internal Revenue Service ("IRS") have published guidelines explaining that misclassification of an employee violates the law. *See e.g.* DOL Misclassification Publication, *available at* https://www.dol.gov/whd/workers/Misclassification/misclassification-facts.pdf; *see also* DOL Fact Sheet #13, https://www.dol.gov/whd/regs/compliance/whdfs13.pdf; *see also* IRS Publication 1779 (Rev-3-2012), *available at* https://www.irs.gov/pub/irs-pdf/p1779.pdf.

31. The DOL guidelines explain that "Employers may not misclassify an employee for any reason, even if the employee agrees." *See* https://www.dol.gov/whd/workers/Misclassification/misclassification-facts.pdf

32. The DOL also explains that "'Common industry practice' is not an excuse to misclassify [an employee] under the FLSA." *Id.*

33. And, the DOL explains that "Signing an independent contractor agreement does not make [an individual] an independent contractor under the FLSA." *Id.*

34. After receiving the Consulting Agreement, Dev himself informed PR that he refused to engage in PR's scheme to violate the law. Dev was concerned that his misclassification violated tax and labor laws. He informed PR that his classification as an employee should continue.

35. Despite Dev's efforts, PR continued to misclassify Dev as an independent contractor.

36. On September 8, 2016, Dev asked his counsel to notify PR that he was concerned that his change in status from employee to consultant did not meet DOL or IRS regulations.

37. Dev requested that his counsel inform Defendants that Dev refused to engage in Defendants' illegal activity to avoid numerous labor and tax laws.

38. Dev's counsel contacted Defendants and explained that Dev refused to participate in PR's illegal scheme to avoid paying employment taxes.

39. Within hours of Dev's counsel reporting Dev's refusal to participate in the violations of law, PR terminated Dev's continued employment.

40. There is no other practical act that Dev could have taken to refuse to participate in PR's illegal activity.

41. Under the IWA, an employer may not retaliate against an employee who refuses to participate in an activity that would result in a violation of a State or federal law. 740 ILCS 174/20.

42. PR fired Dev for his refusal to participate in its violation of IRS and DOL regulations.

43. Under the IWA, Dev is entitled to all relief necessary to make him whole, including back pay with interest, reinstatement of employment, vesting of his options, attorneys' fees and costs. 740 ILCS 174/30.

44. PR's actions also violate Illinois's common law, which prohibits an employer from retaliating against an employee who reports or refuses to engage in violations of law.

45. Notably, Defendants' conduct to avoid paying taxes violates Illinois's public policy. *See Barker v. Atl. Pac. Lines*, No. 13 C 1272, 2013 U.S. Dist. LEXIS 114578, at *21 (N.D. Ill. Aug. 14, 2013) (*citing* and *quoting* 26 U.S.C. § 2702; 35 ILCS 5/1301; *Russ v. Pension Consultant Co.*, 182 Ill. App. 3d 769, 776–77 (1989) ("Illinois has an interest in the enforcement of the federal tax law because federal tax records could also mean the falsification of state tax records, since the legislature has adopted the federal taxable income as the starting point for calculating the state corporate income tax."); *see also See Hill v. Sisters of St. Francis Health Servs.*, No. 06 C 1488, 2006 U.S. Dist. LEXIS 92874, at *4–5 (N.D. Ill. Dec. 20, 2006) ("Illinois courts have repeatedly held that tax laws in general . . . express the State's public policy.") (collecting cases).

46. Both the IWPCA and FLSA prohibit an employer from retaliating against an employee that makes complaints to the employer regarding the employee's wages.

47. After PR terminated Dev's employment on September 8, 2016, Dev submitted his time and expense records to PR.

48. PR assured Dev it would pay him for the time he submitted and work he completed.

49. To date, PR paid Dev only a portion of his earned compensation.

50. PR's conduct violated the IWPCA.

51. The IWPCA requires employers to pay employees all wages earned during each semi-monthly pay period. 820 ILCS 115/3. The IWPCA further requires that all earned wages be paid not later than thirteen (13) days after the end of the pay period in which such wages were earned. 820 ILCS 115/4.

52. The IWPCA also mandates that officers of a corporation who knowingly permit violations of the IWPCA shall be individually liable. 820 ILCS 115/12.

53. Moog intentionally withheld Dev's compensation in retaliation for his refusal to participate in PR illegal attempt to reclassify Dev's employment.

54. Under the IWPCA, Dev is entitled to receive his earned wages, reimbursement of his expenses, attorneys' fees and legal costs, and interests. 820 ILCS 115/14.

## COUNT I AGAINST PR
### Violation of the Illinois Whistleblower Act – 740 ILCS 174/1 *et seq.*

55. Dev re-pleads the allegations contained in Paragraphs 1 through 54 of this Complaint and incorporates them by reference as if fully set forth herein.

56. On or about August 15, 2016, PR removed Dev from his employed position of COO and reclassified his status as an independent contractor.

57. At PR's request, Dev continued to perform the same services he performed as a COO and was promised payment equivalent to the hourly breakdown of his annual salary.

58. Dev continued to manage high-level proprietary transactions for PR.

59. Despite PR's unilateral decision to misclassify Dev, he continued to work as an employee for PR.

60. After receiving the Consulting Agreement, Dev himself informed PR that he refused to engage in PR's scheme to violate the law. Dev was concerned that his misclassification as an independent contractor violated tax and labor laws. He informed PR that

his classification as an employee should continue. Despite Dev's efforts, PR continued to misclassify Dev as an independent contractor.

61. On September 8, 2016, Dev reported to PR, through his counsel, that he believed his reclassification violated IRS and DOL regulations. He told PR he believed he should continue to be paid as an employee and refused to participate in defrauding the state and federal governments.

62. Within hours of reporting his refusal to participate in PR's violations of law, PR terminated Dev's continued employment.

63. PR's misclassification and failure to pay employment taxes violated numerous laws, including FICA, FUTA, IRC §§ 3101–3102, 3301, IRS guidelines, DOL guidelines, and Illinois Income Tax Act, 35 ILCS 5/701.

64. At all relevant times herein, the IWA was in effect and provided, in pertinent part, that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." 740 ILCS 174/20.

65. In violation of the IWA, and in willful disregard for Dev's rights, PR retaliated against and discharged Dev from his employment at the Corporation as a result of, and in direct retaliation for, his legally protected conduct as alleged above.

66. As a result of PR's retaliation against Dev in violation of the IWA, Dev has lost an annual salary of $350,000 per year, bonus opportunity of $175,000, options valued at approximately $600,000, and significant emotional damage related to his unemployed status.

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for

damages in an amount believed to be in excess of $1,150,000, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper under the circumstances.

## COUNT II AGAINST PR
### Retaliatory Discharge

67. Dev re-pleads the allegations contained in Paragraphs 1 through 66 of this Complaint and incorporates them by reference as if fully set forth herein.

68. On or about August 15, 2016, PR removed Dev from his employed position of COO and reclassified his status as an independent contractor.

69. At PR's request, Dev continued to perform the same services he performed as a COO and was promised payment equivalent to the hourly breakdown of his annual salary.

70. Dev continued to manage high-level proprietary transactions for PR.

71. Despite PR's unilateral decision to misclassify Dev, he continued to work as an employee for PR.

72. After receiving the Consulting Agreement, Dev himself informed PR that he refused to engage in PR's scheme to violate the law. Dev was concerned that his misclassification violated tax and labor laws. He informed PR that his classification as an employee should continue. Despite Dev's efforts, PR continued to misclassify Dev as an independent contractor.

73. On September 8, 2016, Dev reported to PR, through his counsel, that he believed his reclassification violated IRS and DOL regulations. He told PR he believed he should continue to be paid as an employee and refused to participate in defrauding the state and federal governments.

74. Within hours of reporting his refusal to participate in PR's violations of law, PR terminated Dev's continued employment.

75. PR's misclassification and failure to pay employment taxes violated numerous laws, including FICA, FUTA, IRC §§ 3101–3102, 3301, IRS guidelines, DOL guidelines, and the Illinois Income Tax Act, 35 ILCS 5/701.

76. Dev's report to PR that its classification of his employment as an independent contractor was protected by clearly mandated public policies as the State of Illinois has an interest in ensuring its businesses properly pay taxes. *See Barker*, No. 13 C 1272, 2013 U.S. Dist. LEXIS 114578, at *21 (*citing* and *quoting* 26 U.S.C. § 2702; 35 ILCS 5/1301; *Russ*, 182 Ill. App. 3d at 776–77 ("Illinois has an interest in the enforcement of the federal tax law because federal tax records could also mean the falsification of state tax records, since the legislature has adopted the federal taxable income as the starting point for calculating the state corporate income tax."); *see also See Hill*, No. 06 C 1488, 2006 U.S. Dist. LEXIS 92874, at *4–5 ("Illinois courts have repeatedly held that tax laws in general . . . express the State's public policy.") (collecting cases).

77. PR's retaliation against Dev was intentional, willful, wanton, and malicious.

78. As a direct and proximate result of PR's retaliatory conduct, Dev has been without employment.

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for damages in an amount believed to be in excess of $1,150,000, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper under the circumstances. Plaintiff also requests that this Honorable Court

award Plaintive punitive damages to punish and deter PowerReviews from engaging in its intentional retaliation.

**COUNT III AGAINST PR**
**Retaliation in Violation of the Illinois Wage Payment and Collect Act – 820 ILCS 115/13**

79. Dev re-pleads the allegations contained in Paragraphs 1 through 78 of this Complaint and incorporates them by reference as if fully set forth herein.

80. On or about August 15, 2016, PR removed Dev from his employed position of COO and reclassified his status as an independent contractor.

81. At PR's request, Dev continued to perform the same services he performed as a COO and was promised payment equivalent to the hourly breakdown of his annual salary.

82. Dev continued to manage high-level proprietary transactions for PR.

83. Despite PR's unilateral decision to misclassify Dev, he continued to work as an employee for PR.

84. After receiving the Consulting Agreement, Dev himself informed PR that he refused to engage in PR's scheme to violate the law. Dev was concerned that his misclassification violated tax and labor laws. He informed PR that his classification as an employee should continue. Despite Dev's efforts, PR continued to misclassify Dev as an independent contractor.

85. On September 8, 2016, Dev reported to PR, through his counsel, that he believed his reclassification violated IRS and DOL regulations. He told PR he believed he should continue to be paid as an employee and refused to participate in defrauding the state and federal governments.

86. Within hours of reporting his refusal to participate in PR's violations of law, PR terminated Dev's continued employment.

87. PR's retaliation against Dev was intentional, willful, wanton, and malicious.

88. Under the IWCPA, it is unlawful for an employer to retaliate against an employee in retaliation for an employee that complains the employer violated the IWCPA. *See* 820 ILCS 115/14(c).

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for damages in an amount believed to be in excess of $1,150,000, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper under the circumstances.

## COUNT IV AGAINST PR
### Violation of the Illinois Wage Payment and Collection Act – 820 ILCS 115/13

89. Dev re-pleads the allegations contained in Paragraphs 1 through 88 of this Complaint and incorporates them by reference as if fully set forth herein.

90. At all relevant times herein, the IWCPA was in effect. Section 3 of the IWPCA provides that Defendants must pay Dev his earned wages at least semi-monthly, and Section 5 of the IWPCA requires the payment of final compensation no later than the next scheduled payroll date. 820 ILCS § 115/3. Section 4 of the IWCPA provides that, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

91. At PR's request, Dev continued to perform his COO services for PR between August 15, 2016 and September 8, 2016.

92. Between August 15, 2016 and September 8, 2016, Dev remained an employee for PR.

93. Dev reported all hours that he worked to PR through September 2, 2016, as of September 12, 2016.

94. Dev's Employment Agreement, attached as Exhibit 1, represented that Dev would be paid "twice monthly on the 15th and 30th/31st day of each month."

95. To date, PR has not paid Dev outstanding wages due totaling approximately $3,500.

96. PR is violating the IWCPA by failing to pay Dev his earned wages.

97. Because Dev has been forced to take legal action to receive his earned wages and expenses, Dev is now entitled to receive his compensation and expenses, along with attorneys' fees and costs and 2% interest for each month for any late payments:

> Any employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees.

820 ILCS 115/14(a).

98. As a direct and proximate result of PR's violation of the IWPCA, as alleged, Dev has been damaged in an amount in excess of $3,500, plus interest, reasonable attorneys' fees, and costs all in an amount to be determined at trial.

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for all damages directly and proximately caused by this violation of the Illinois Wage Payment and Collection Act, including $3,500, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper.

# COUNT V AGAINST MATTHEW MOOG
**Violation of the Illinois Wage Payment and Collection Act – 820 ILCS 115/13**

99. Dev re-pleads the allegations contained in Paragraphs 1 through 98 of this Complaint and incorporates them by reference as if fully set forth herein.

100. At all relevant times, the IWPCA was in effect and provided, in pertinent part, that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13. This provision holds the officers and agents of an employer individually liable for damages caused by a company's violations of the IWPCA.

101. At all times during Dev's employment, Matthew Moog was the Principal Owner and CEO of PR.

102. As COO of PR, Dev reported to and answered to the CEO.

103. It was Moog who made the decision to terminate Dev in retaliation for his refusal to participate in illegal activity.

104. It was Moog's decision not to pay Dev his earned compensation.

105. Between August 15, 2016 and September 8, 2016, Dev remained an employee for PR: Defendants calculated Dev's contractor rate based on his employed salary, Dev continued to work on the same projects which he managed as PR's COO, Dev had to comply with Defendants' instruction as to when and where he was able to conduct his duties, Defendants required Dev to devote substantially his full time to his duties for Defendants, Dev continued to work for only one employer, Dev continued to use PR's equipment at PR's office, Defendants maintained the right to discharge or terminate Dev at any time even after changing his employment status, and PR presented Dev with a Consulting Agreement that was nearly identical to Dev's employment agreement.

106. Therefore, Moog is individually liable for PR's violations of the IWPCA because he "knowingly permit[ted] [Defendant PR] to violate the provisions of this Act." *Id.*

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **MATTHEW MOOG**, for all damages directly and proximately caused by this violation of the Illinois Wage Payment and Collection Act, including $3,500, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper.

### COUNT VI AGAINST PR
**Violation of the Fair Labor Standards Act**

107. Dev re-pleads the allegations contained in Paragraphs 1 through 106 of this Complaint and incorporates them by reference as if fully set forth herein.

108. On August 26, 2016, PR presented Dev with a Consulting Agreement that was nearly identical to Dev's previous employment agreement.

109. At PR's request, Dev continued to perform his COO services for PR between August 15, 2016 and September 8, 2016.

110. Dev reported all hours that he worked to PR as of September 12, 2016.

111. Under FLSA, Dev was an employee, and not an independent contractor.

112. PR's attempt to reclassify Dev's employment as an independent contractor violates the FLSA.

113. After receiving the Consulting Agreement, Dev himself informed PR that he refused to engage in PR's scheme to violate the law. Dev was concerned that his misclassification violated tax and labor laws. He informed PR that his classification as an employee should continue. Despite Dev's efforts, PR continued to misclassify Dev as an independent contractor.

114. On September 8, 2016, Dev reported to PR, through his counsel, that he believed his reclassification violated IRS and DOL regulations. He told PR he believed he should continue to be paid as an employee and refused to participate in defrauding the state and federal governments.

115. Within hours of reporting his refusal to participate in PR's violations of law, PR terminated Dev's continued employment.

116. PR terminated Dev in response to his complaints of FLSA.

117. Section 15(a)(3) of the FLSA makes it unlawful for an employer to terminate an employee for making a complaint to the employer that the employer violated FLSA.

118. PR's violation of the FLSA was willful because PR was aware or should have been aware of its obligations under FLSA, but attempted to circumvent its provisions.

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for damages in an amount believed to be in excess of $1,150,000, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper under the circumstances.

### COUNT VII AGAINST PR
**Breach of Contract**

119. Dev re-pleads the allegations contained in Paragraphs 1 through 118 of this Complaint and incorporates them by reference as if fully set forth herein.

120. At PR's request, Dev continued to perform his COO services for PR between August 15, 2016 and September 8, 2016.

121. PR promised to pay Dev for his services.

122. Dev reported all hours that he worked to PR through September 2, 2016, as of September 12, 2016.

123. To date, PR has not paid Dev outstanding wages due totaling approximately $3,500.

**WHEREFORE**, Plaintiff, **DEVAJIT MUKHERJEE**, respectfully prays that this Honorable Court enter judgment in his favor against Defendant **POWERREVIEWS, INC.**, for all damages directly and proximately caused by the breach of contract, including $3,500, plus prejudgment interest, reasonable attorneys' fees, and costs, and for such other and further relief this Honorable Court deems just and proper.

## JURY DEMAND

124. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Dev demands a trial by jury of all issues raised in this Complaint.

Respectfully submitted,

Devajit Mukherjee

By: *Kristen E. Prinz*
One of the Plaintiff's Attorneys

The Prinz Law Firm, P.C.
Kristen E. Prinz (kprinz@prinz-lawfirm.com)
Amit Bindra (abindra@prinz-lawfirm.com)
1 East Wacker Drive, Suite 550
Chicago, IL 60601
P: (312) 212-4450
F: (312) 284-4822